IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>WEH Liquidating, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11602 (TMH)<br><br>(Jointly Administered) |
| WEFC Liquidating, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRAD BONHAM; MB & BB HOLDINGS, LLC; MATT DAVIS; WALKER EDISON HOLDING COMPANY, LLC; PROSPECT HILL GROWTH PARTNERS, L.P.; JWC-WE HOLDCO, LLC; JWC-WE HOLDINGS, L.P.; PROSPECT HILL GROWTH FUND II, L.P.; PROSPECT HILL GROWTH FUND II CO-INVEST, L.P.; PHIL DAMIANO; KEN MURPHY; ADAM SUTTIN; KYLE CASELLA; DAVID FIORENTINO, and DOES 1-100,<br><br>Defendants. | Adv. Proc. No. 25-52457-TMH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PRELIMINARY MOTION FOR PARTIAL SUMMARY JUDGMENT**

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: WEH Liquidating, LLC f/k/a Walker Edison Holdco LLC (8817); WEI Liquidating, LLC f/k/a Walker Edison Intermediate, LLC (3363); WEFC Liquidating, LLC f/k/a Walker Edison Furniture Company LLC (6576); and EWF Liquidating, LLC f/k/a EW Furniture, LLC (6288). The Debtors' mailing address is 6890 S 2300 E #71067, Salt Lake City, UT 84171.

# TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT ........................................................................... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 2

III. SUMMARY OF ARGUMENT ........................................................................... 3

IV. STATEMENT OF FACTS .............................................................................. 3

V. LEGAL STANDARD..................................................................................... 10

VI. ARGUMENT............................................................................................ 10

A. Blue Owl Lacks Standing to Assert Non-Party Lender Claims ..........................................................................10

1. The Assignment Agreement is Void as Champertous ...............................12

2. Evolution and Bain's Fraud, Aiding and Abetting, and Conspiracy Claims Cannot be Assigned Under Utah Law........................14

B. The Liquidating Trust and Blue Owl Cannot Demonstrate a Fraudulent Transfer Because the 2265 Account Was Encumbered by Valid Liens.......................................................................15

VII. CONCLUSION.......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed. Bank* v. *W. Cent. Ag Servs.*,
530 F. Supp. 3d 780 (D. Minn. 2021) ....................17, 18

*Aretakis* v. *Caesars Ent't*,
2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018) ....................13

*Bluebird Partners* v. *First Fid. Bank*,
731 N.E.2d 581 (N.Y. Ct. App. 2000) ....................13

*Citizens Bank of Clearwater* v. *Hunt*,
927 F.2d 707 (2d Cir. 1991) ....................16

*Dougherty* v. *Carlisle Transp. Prods., Inc.*,
610 F. App'x 91 (3d Cir. 2015) ....................12, 14

*Edgewater Growth Cap. Partners LP* v. *H.I.G. Cap., Inc.*,
68 A.3d 197 (Del. Ch. 2013) ....................18

*In re Fair Fin. Co.*,
13 F.4th 547 (6th Cir. 2021) ....................17

*Ferens* v. *John Deere Co.*,
494 U.S. 516 (1990) ....................16

*Finkelman* v. *Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) ....................11

*Gilbert* v. *DHC Development, LLC*,
2013 WL 4881492 (D. Utah Sept. 12, 2013) ....................14

*Justinian Capital*, 65 N.E.3d 1253 (N.Y. Ct. App. 2016) ....................14

*Jutrowski* v. *Township of Riverdale*,
904 F.3d 280 (3d Cir. 2018) ....................11

*Kapila* v. *CTS Equities Ltd. P'ship*,
421 So. 3d 748 (Fla. Dist. Ct. App. 2025), *reh'g denied* (Oct. 14, 2025) ....................17, 18

*Kirzhner* v. *Mercedes-Benz USA, LLC*,
470 P.3d 56 (Cal. 2020) ....................19

*Lujan* v. *Defs. of Wildlife*,
504 U.S. 555 (1992) ....................11

*In re Majestic Star Casino, LLC*,
716 F.3d 736 (3d Cir. 2013)....................12

*Mayer* v. *Rankin*,
63 P.2d 611 (Utah 1936)....................15

*In re Mirant Corp*.,
675 F.3d 530 (5th Cir. 2012) ....................9

*Nichols* v. *Markell*,
2014 WL 1509780 (D. Del. Apr. 17, 2014)....................11

*Phoenix Light SF Ltd.* v. *U.S. Bank Nat'l Ass'n*,
612 F. Supp. 3d 263 (S.D.N.Y. 2020)....................12, 14

*Rivera* v. *Redfern*,
98 F.4th 419 (3d Cir. 2024) ....................10

*Rupp* v. *Moffo*,
358 P.3d 1060 (Sup. Ct. of Utah 2015)....................17, 18

*Russell/Packard Dev., Inc.* v. *Carson*,
78 P.3d 616 (Utah Ct. App. 2005) ....................15

*Schaller* v. *United States Soc. Sec. Admin.*,
844 F. App'x 566 (3d Cir. 2021) ....................11

*Schultz* v. *Midland Credit Mgmt, Inc.*,
617 F. Supp. 3d 249 (D.N.J. 2022) ....................11

*Semi-Tech Litig., LLC* v. *Bankers Tr. Co.*,
272 F. Supp. 2d 319 (S.D.N.Y. 2003)....................12

*Spokeo, Inc.* v. *Robins*,
578 U.S. 330 (2016)....................11

*Thermo Credit, LLC* v. *DCA Servs., Inc.*,
755 F. App'x 450 (6th Cir. 2018) ....................17, 18

*In re WEH Liquidating LLC*,
No. 25-11602 (TMH)....................1

*Westgate Resorts, Ltd.* v. *Consumer Protection Grp., LLC*,
285 P.3d 1219 (Utah 2012)....................15, 16

**Statutes**

28 U.S.C. § 3301....................17

11 U.S.C. § 544(b) ....................3, 9, 17

Cal. Com. Code § 9102 (2001) ....................19

Cal. Com. Code § 9104 (2001) ....................19

Cal. Com. Code § 9304 (2001) ....................19

Cal. Com. Code § 9314 (2001) ....................19

Cal. Com. Code § 9317 (2001) ....................19

Del. Code Ann. tit. 6, § 1301 ....................16, 17

Del. Code Ann. tit. 6, § 9-304 ....................19

N.Y. Jud. Law § 489 ....................12

U.C.C. § 9-102 (Am. L. Inst. & Unif. L. Comm'n 2010) ....................6

U.C.C. § 9-104 (Am. L. Inst. & Unif. L. Comm'n 2010) ....................19, 20

U.C.C. § 9-304(a) ....................19

Utah Code Ann. § 25-6-102 ....................16, 17

Utah Code Ann. § 25-6-402 ....................16

Utah Code Ann. § 70A-9a-304 ....................19

**Other Authorities**

Fed. R. Bankr. Proc. 7056 ....................11

Fed. R. Civ. P. 56 ....................11

## I. PRELIMINARY STATEMENT[2]

This case involves ten legal claims asserted against thirteen defendants across three operative complaints brought by Walker Edison, the Liquidating Trust, and Blue Owl, on behalf of itself and twenty-seven Non-Party Lenders.[3] Defendants anticipate filing summary judgment motions demonstrating, based on the complete factual record, that there are no genuine issues of disputed fact as to many of the claims and Defendants' numerous defenses. However, Defendants bring this preliminary summary judgment motion now on two threshold legal issues, the resolution of which requires neither expert testimony nor a deep-dive into the evidentiary record. If successful, this motion will substantially narrow the issues to be resolved in subsequent summary judgment motions or at trial. The two threshold issues are:

*First,* Blue Owl lacks standing to assert claims on behalf of the Non-Party Lenders. The sole mechanism by which those claims are alleged to have been conveyed to Blue Owl is an Assignment Agreement governed by New York law that was executed ***the day before*** Blue Owl filed suit and for the explicit purpose of having Blue Owl bring litigation claims against Defendants. Because the sole purpose of the assignment was to enable Blue Owl to bring this

---

[2] Citations to "D.I. __" refer to the docket in the above captioned adversary proceeding. Citations to "Bankr. D.I. __" refer to the docket in the related chapter 11 case, *In re WEH Liquidating LLC*, No. 25-11602 (TMH). All Ex. __ citations are to Defendants' Opening Appendix filed contemporaneously herewith. Terms used but not defined in Sections I–III of this memorandum shall have the meanings ascribed to those terms elsewhere in this memorandum.

[3] Pursuant to the "Combined Disclosure Statement and Chapter 11 Plan of Liquidation of WEH Liquidating, LLC F/K/A Walker Edison Holdco LLC and its Debtor Affiliates" (the "Plan"), Bankr. D.I. 413-1, as confirmed by the "Findings of Fact, Conclusions of Law, and Order Approving on a Final Basis And Confirming the [Plan]" Bankr. D.I. 413, a "Liquidating Trust" was established and the above-captioned debtors (the "Debtors") contributed, and Blue Owl had the "sole discretion" whether or not to contribute, their "Utah Litigation Assets" to the Liquidating Trust. *See* Plan ¶ 9.3(c), Bankr. D.I. 413-1. The Complaint in Intervention ("CII") filed by the Liquidating Trust asserts that "[u]pon the filing of the Petitions, the causes of action for actual and constructive fraudulent transfers brought by Blue Owl in this adversary proceeding became property of the Debtors' estates." *See* CII ¶ 100, D.I. 95-1. Thus, the Liquidating Trust is asserting that it is prosecuting those claims through the CII. *See id.* ¶ 101. The CII does not contend that the Liquidating Trust is prosecuting Blue Owl's remaining claims—including the claims it is (improperly) pursuing on behalf of the Non-Party Lenders as described herein—so Blue Owl remains the plaintiff with respect to those claims.

litigation, it is void as champertous under New York law. This defect disposes of all Non-Party Lender claims.

Even assuming the Assignment Agreement was valid as a matter of New York law, Blue Owl would lack standing to assert Evolution and Bain's claims for fraud, aiding and abetting, and conspiracy. Blue Owl argues these claims arise under Utah law, but Utah law prohibits assignment of personal tort claims unless the assigning party is seeking to recover identifiable property that it provided to the defendant. Here, Evolution and Bain acquired portions of the Term Loan in June and August 2021 directly from Blue Owl or its affiliated funds, not from Defendants. The Assignment Agreement therefore conveyed nothing more than a "naked claim of fraud" that is unenforceable under Utah law.

*Second*, the Distributions provided for by the Term Loan did not transfer any "asset" that can support a fraudulent transfer claim because the relevant bank account was encumbered by valid liens at the time of the Distributions. Property subject to a valid lien is not an "asset" as a matter of law. Therefore, Defendants are entitled to summary judgment on all of the Liquidating Trust's claims, as well as Blue Owl's fraudulent transfer claims.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Blue Owl Capital Corporation ("Blue Owl"), formerly known as Owl Rock Capital Corporation, asserts claims against the above-captioned defendants ("Defendants") for actual and constructive fraudulent transfer, civil conspiracy, fraud, aiding and abetting fraud, and unjust enrichment on its own behalf and on behalf of twenty-seven Non-Party Lenders.[4] Walker Edison Furniture Company, LLC ("Walker Edison") asserts claims for wrongful distribution, actual and constructive fraudulent transfer, breach of fiduciary duty, breach of the implied covenant of good

[4] The Non-Party Lenders are set forth in **Schedule A**.

faith and fair dealing, aiding and abetting fiduciary breach, civil conspiracy, and unjust enrichment. WEFC Liquidating, LLC (the "Liquidating Trust") asserts claims for actual and constructive fraudulent transfer under Section 544(b) of the Bankruptcy Code. Defendants deny liability. Fact discovery is closed. A ten-day bench trial is set to begin on October 26, 2026.

## III. SUMMARY OF ARGUMENT

1. Summary judgment should be granted in Defendants' favor to dismiss all claims that Blue Owl purports to assert on behalf of the Non-Party Lenders. Blue Owl lacks standing to assert such claims as the Assignment Agreement is invalid as a matter of law under New York's champerty statute. Alternatively, even if the Court determined that the Assignment Agreement were valid, summary judgment should be granted in Defendants' favor to dismiss Evolution and Bain's fraud, aiding and abetting, and conspiracy claims, which are unassignable personal tort claims under Utah law.

2. Summary judgment should be granted in Defendants' favor with respect to the Liquidating Trust and Blue Owl's actual and constructive fraudulent transfer claims. The cash that funded the Distributions was held in a deposit account subject to valid liens in favor of both Wells Fargo and Blue Owl at the time the Distributions were made. Property subject to a valid lien is not an "asset" within the meaning of the Fraudulent Transfer Statutes, and the claims fail as a matter of law.

## IV. STATEMENT OF FACTS

Plaintiff Blue Owl is a specialty finance and business development company that provides lending services to middle market companies in the United States through both direct loans and as an administrative agent. Blue Owl First Amended Complaint ("FAC") ¶ 6, D.I. 3 at 55. Blue Owl asserts a variety of claims including fraud, fraudulent transfer, and unjust enrichment arising from loans it extended to Walker Edison on March 31, 2021. In addition to these claims in its capacity

as a lender, Blue Owl also asserts claims purportedly assigned to it by twenty-seven non-party lenders, including six other funds affiliated with Blue Owl (the "Non-Party Blue Owl Funds"), nine PennantPark Investment Corporation funds ("PennantPark"), Evolution Credit Partners I, L.P. ("Evolution"), and eleven Bain Capital, LP funds ("Bain," and together with the Non-Party Blue Owl Funds, PennantPark, and Evolution, the "Non-Party Lenders," and together with Blue Owl, the "Lenders"). Ex. 1, A0006–11, A0016–17; FAC ¶ 11, D.I. 3 at 57; Ex. 2, A0031.

Both Blue Owl and the Liquidating Trust claim that payment of the Distributions constituted actual and constructive fraudulent transfers. CII ¶¶ 101–113, D.I. 95-1; FAC ¶¶ 137–156, D.I. 3 at 105–08.

**A. The 2265 Account**

Prior to the Term Loan described below, Walker Edison had two primary debt facilities: (i) a term loan facility [redacted], and (ii) an asset-based loan [redacted] Walker Edison also maintained several bank accounts with Wells Fargo, including account number [redacted] (the "2265 Account"). [redacted]

[redacted]

### B. The Term Loan

The $300 million term loan ("Term Loan") at the heart of this case was executed on March 31, 2021 with three separate groups of Lenders: Blue Owl [redacted] of the Term Loan; the Non-Party Blue Owl Funds [redacted] of the Term Loan; and PennantPark owned [redacted] of the Term Loan. [redacted]

[redacted]

### C. The Intercreditor Agreement & Perfection of Blue Owl's Security Interest

[redacted]

[redacted]

[redacted] These Term Loan proceeds subsequently funded the Distributions, as described below.

[redacted]

**D. The Distributions**

Approximately $210 million was paid to certain Defendants and others out of the 2265 Account on March 31, 2021, as was a refinancing payment to cancel [redacted]. [redacted]

---

5 [redacted] Uniform Commercial Code's ("U.C.C.") definition of "Deposit Account," Ex. 14, A0857 (§ 1.1), i.e., "a demand, time, savings, passbook, or similar account maintained with a bank," U.C.C. § 9-102(a)(29) (Am. L. Inst. & Unif. L. Comm'n 2010).

[redacted] to, among others, JWC-WE Holdco, LLC ($119,895,590.37), MB & BB Holdings, LLC ($66,143,473.13), and Matt Davis ($22,049,157.32) (these payments collectively, the "Distributions") along with an approximately $82 million payment ($82,874,156.25) to the corporate trust and agency services account to refinance the [redacted].

### E. The Syndication

In the months following the close of the Term Loan, Blue Owl sold [redacted] of the Term Loan through syndication, by selling portions of its position in the Term Loan to Evolution and Bain. [redacted], Evolution purchased [redacted] of the Term Loan from Blue Owl. [redacted] Bain purchased [redacted] of the Term Loan, with Blue Owl selling [redacted] and the Non-Party Blue Owl Funds selling [redacted]

Until the Assignment Agreement (discussed below), none of the agreements executed between Blue Owl and the Non-Party Lenders provided that Blue Owl could assert the Non-Party Lenders' potential litigation claims. [redacted]

**F. The Restructuring**

On March 1, 2023, Walker Edison and the Lenders consummated a series of restructuring transactions through which the Lenders assumed ownership and control of Walker Edison by receiving 100% of the equity interests previously owned by Defendants and others. Ex. 18, A0945.

On May 8, 2023, Walker Edison sued Defendants, asserting a host of claims relating to the Term Loan, including wrongful distribution for payment of the Distributions, fraudulent transfer against subsequent transferees of the Distributions, and breach of fiduciary duty (the "Company Complaint").

**G. The Assignment Agreement and Blue Owl's Lawsuit**

On April 24, 2024, Blue Owl filed suit asserting claims on its own behalf and purportedly on behalf of the Non-Party Lenders.

Blue Owl and the Non-Party Lenders executed an Assignment and Assumption Agreement (the "Assignment Agreement") [redacted] before Blue Owl filed suit. [redacted] Blue Owl has identified the

Assignment Agreement as the sole means by which the Non-Party Lenders assigned their litigation claims. Ex. 1, A0017; FAC ¶ 11, D.I. 3 at 57.

Blue Owl's FAC asserts claims, both on Blue Owl's own behalf and on behalf of the Non-Party Lenders, for constructive fraudulent transfer, actual fraudulent transfer, civil conspiracy, fraud, aiding and abetting fraud, and unjust enrichment. FAC ¶¶ 137–180, D.I. 3 at 105–115.[6] The FAC makes no attempt to distinguish factual allegations pertaining solely to Blue Owl from those pertaining to the Non-Party Lenders, fails to acknowledge the materially different circumstances of each Lender, makes no attempt to plead the purportedly assigned litigation claims with the particularity required as to each Lender, and inaccurately presents or omits important details relevant to certain Lenders.

For example, the FAC places weight on an alleged "material accounting error" that Blue Owl contends Defendants concealed during the due diligence process prior to the execution of the Credit Agreement. FAC ¶¶ 7, 52, 64, 65, 79, D.I. 3 at 55–81. The FAC does not distinguish the information known to each Lender and instead construes the "material accounting error" as an allegedly fraudulent omission that impacted every Lender and forms the basis for their claims in the FAC. FAC ¶ 67, D.I. 3 at 75. [redacted] The FAC also repeatedly

[6] The CII purports to assert fraudulent transfer claims originally asserted by Blue Owl in the FAC by operation of Section 544(b)(1) of the Bankruptcy Code, CII ¶ 101, and the Plan, *see supra* n.3. Defendants do not concede that the Liquidating Trust has standing to assert Blue Owl's fraudulent transfer claims pursuant to Section 544(b) because (i) Blue Owl was not an unsecured creditor as of Walker Edison's bankruptcy filing and (ii) United States Customs and Border Protection's purported claims do not provide a basis for the Liquidating Trust to assert any fraudulent transfer claims because, among other defects, the Federal Debt Collection Procedures Act does not qualify as "applicable law" for purposes of Section 544(b)(1). *See In re Mirant Corp.*, 675 F.3d 530, 534–36 (5th Cir. 2012). These issues and others are not relevant to the arguments raised in this motion, however, because the grounds for dismissing the fraudulent transfer claims under all of the statutes cited in both the CII and the FAC are the same: the allegedly transferred property was subject to a valid lien at the time of the Distributions.

refers to alleged misrepresentations and omissions that purportedly induced Blue Owl "and the other Lenders" to fund the Term Loan, *see, e.g.*, FAC ¶¶ 2, 7, 8, 53, 58, 59, 62, 102, D.I. 3 at 52–102, [redacted]

### H. The Final Cash Collateral Order

Following Walker Edison and the Debtors' bankruptcy filings, the Court entered the Final Cash Collateral Order.[7] Paragraph 18(d) of the Final Cash Collateral Order provides that if no party challenges the perfection or validity of Blue Owl or Wells Fargo's prepetition liens prior to the Court-approved deadline for doing so, such liens "shall not be subject to any other or further claim or challenge." Final Cash Collateral Order ¶ 18(d), Bankr. D.I. 229 at 61–62.

## V. LEGAL STANDARD

Summary judgment is proper on a claim or defense if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," when viewing the evidence "in the light most favorable to the non-moving party." *Rivera* v. *Redfern*, 98 F.4th 419, 422 (3d Cir. 2024); Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. Proc. 7056). The non-moving party's reliance on "[b]are assertions" or "conclusory allegations" does not suffice to defeat summary judgment. *Jutrowski* v. *Township of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).

## VI. ARGUMENT

### A. Blue Owl Lacks Standing to Assert Non-Party Lender Claims

To have standing to sue under Article III, a plaintiff must establish that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

---

[7] The "Final Cash Collateral Order" refers to the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Clams with Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, Bankr. D.I. 229.

likely to be redressed by a favorable judicial decision." *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016). A plaintiff must demonstrate an injury in fact for each individual claim and form of relief sought. *Nichols* v. *Markell*, 2014 WL 1509780, at *8 (D. Del. Apr. 17, 2014). "The Supreme Court has repeatedly described the question of Article III standing as a 'threshold issue,' and [courts] have a continuing obligation to assure [them]selves of . . . jurisdiction." *Schaller* v. *United States Soc. Sec. Admin.*, 844 F. App'x 566, 570 (3d Cir. 2021). This obligation "is antecedent to [the Court's] power to reach the merits of that claim." *Finkelman* v. *Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). Assessing a plaintiff's standing, therefore, "cannot be delayed until after summary judgment." *Schultz* v. *Midland Credit Mgmt, Inc.*, 617 F. Supp. 3d 249, 255 (D.N.J. 2022).

Because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As such, "in response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.*

A plaintiff may generally "assert his own legal rights and interests," but cannot "rest his claim to relief on the legal rights or interests of third parties." *In re Majestic Star Casino, LLC*, 716 F.3d 736, 748 (3d Cir. 2013) (quoting *Warth* v. *Seldin,* 422 U.S. 490, 498 (1975)). However, a plaintiff may establish Article III standing through a legally valid assignment. *See Dougherty* v. *Carlisle Transp. Prods., Inc.*, 610 F. App'x 91, 93–94 (3d Cir. 2015).

Here, there is no genuine question of material fact as to whether Blue Owl has standing to pursue claims on behalf of the Non-Party Lenders because the Assignment Agreement is fatally defective in at least two respects:

### 1. The Assignment Agreement is Void as Champertous

The Assignment Agreement is invalid as a matter of law under New York's champerty doctrine.[8] Section 489 of the New York Judiciary Law states in relevant part:

> [N]o corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy ***or take an assignment of***, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or ***any claim or demand***, ***with the intent and for the purpose of bringing an action or proceeding thereon***.

N.Y. Jud. Law § 489(1) (emphasis added). "[A]n assignment made in violation of [the champerty] statute is void and may not be sued upon." *Semi-Tech Litig., LLC* v. *Bankers Tr. Co.*, 272 F. Supp. 2d 319, 331 (S.D.N.Y. 2003). The critical inquiry in determining whether an assignment is champertous is the "purpose behind [the plaintiffs'] acquisition of rights." *Phoenix Light SF Ltd.* v. *U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 281 (S.D.N.Y. 2020) (alteration in original) (citation omitted). Where the "primary purpose for, if not the sole motivation behind, entering into [a] transaction" is to "bring[] an action or proceeding," the assignment is champertous. *Bluebird Partners* v. *First Fid. Bank*, 731 N.E.2d 581, 587 (N.Y. Ct. App. 2000).

Here, it is clear from the face of the document that the sole purpose of the Assignment Agreement was to allow Blue Owl to bring claims on behalf of the Non-Party Lenders: [redacted]

[8] As set forth above, the Assignment Agreement is governed by New York law.

[redacted] The Court need not go any further in its analysis. *Aretakis* v. *Caesars Ent't*, 2018 WL 1069450, at *10 (S.D.N.Y. Feb. 23, 2018) (an assignment is void as champertous where the language of the assignment "make[s] plain that the purpose of the assignment was to allow Plaintiff to prepare and file a lawsuit.").

Nonetheless, the circumstances surrounding the Assignment Agreement confirm that Blue Owl and the Non-Party Lenders entered into the Assignment Agreement solely to enable Blue Owl to assert Non-Party Lender claims against Defendants. Most tellingly, Blue Owl filed its initial complaint in Utah State Court on April 24, 2024, [redacted] after executing the Assignment Agreement. D.I. 4 at 6. There can be no serious dispute that this lawsuit "was not merely an incidental or secondary purpose of the assignment, but its very essence." *Justinian Capital*, 65 N.E.3d 1253, 1257 (N.Y. Ct. App. 2016). Like here, in *Justinian Capital*, the New York Court of Appeals concluded that the purchase of notes only days prior to bringing suit was evidence that the acquisition was made for no "purpose other than the lawsuit it commenced almost immediately after acquiring the notes" and affirmed dismissal based on violation of the champerty statute. *Id.*

Where, as here, the language of the Assignment Agreement and the circumstances surrounding its execution make clear that its sole purpose was to bring suit, the Agreement should be voided as champertous. *Phoenix Light SF Ltd.* v. *U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263,

281 (S.D.N.Y. 2020); *Dougherty* v. *Carlisle Transp. Products, Inc.*, 610 Fed. App'x 91, 93 (3d Cir. 2015).

### 2. Evolution and Bain's Fraud, Aiding and Abetting, and Conspiracy Claims Cannot be Assigned Under Utah Law

While the Assignment Agreement is governed by New York law, the assignability of the underlying litigation claims is governed by the state law under which such claims arise. Here, Blue Owl purports to assert the Non-Party Lenders' state-law claims for fraud, aiding and abetting, and conspiracy claims under Utah law. *See* Pl. Blue Owl Cap. Corp.'s Opp'n to Defs.' Mot. to Dismiss First Amend. Compl. (the "MTD Opp'n") at 20 n.2, D.I. 8 at 70 (arguing that "Utah has the most significant relationship to the claims and Utah law applies in this action"). Even if the assignments were valid under New York's champerty law (which they are not), Blue Owl lacks standing to pursue Evolution and Bain's fraud, aiding and abetting, and conspiracy claims on the additional, independent ground that such claims are not assignable under Utah law.

Under Utah law—the law Blue Owl contends governs these claims, *see id.*—personal tort claims are generally "not subject to assignment" absent statutory authorization. *Gilbert* v. *DHC Development, LLC*, 2013 WL 4881492 at *11 (D. Utah Sept. 12, 2013). A personal tort is one that "arise[s] from a wrong done to the person, the reputation, or the feelings of the injured party, or to a person's commercial credit," and includes fraud, civil conspiracy, and related claims. *Id.* Fraud claims are assignable only where a defendant received funds from the party assigning their claim and the assigned claim is one where "property is sought to be recovered." *Westgate Resorts, Ltd.* v. *Consumer Protection Grp., LLC,* 285 P.3d 1219, 1228 (Utah 2012). In each of the three Utah appellate decisions addressing this issue, assignors transacted directly with the defendants and sought to recover money the defendants had fraudulently received. *See Mayer* v. *Rankin*, 63 P.2d 611, 616–17 (Utah 1936) (fraud claims were assignable where assignors sought "return of the

money paid to [the Defendant] for the stock."); *Russell/Packard Dev., Inc.* v. *Carson*, 78 P.3d 616, 626 (Utah Ct. App. 2005) (fraud claims were assignable where the "property that the plaintiffs seek to recover through their fraud claims is the money had by the plaintiffs and received fraudulently by the defendants.") (cleaned up); *Westgate Resorts Ltd.*, 285 P.3d at 1227–28 (extending this principle to statutory fraud claims arising under the Utah Consumer Sales Practices Act where "property is sought to be recovered.").

[redacted] There is no disputed question of fact as to whether Defendants received ***any*** funds directly from either Evolution or Bain—they did not. Indeed, the only at-issue transaction occurred on March 31, 2021, which predated [redacted] As such, there is no identifiable "property [] sought to be recovered" from Defendants where Evolution and Bain did not provide funding for the Distributions in the first instance, and the Assignment Agreement purports to assign nothing more than a "naked right to recover for fraud," which is impermissible under Utah law. *Westgate Resorts Ltd.*, 285 P.3d at 1227–28.

Because Blue Owl contends that Utah law governs Evolution and Bain's personal tort claims of fraud, aiding and abetting, and conspiracy, and such claims are unassignable as a matter of Utah law, Defendants are entitled to summary judgment.

### B. The Liquidating Trust and Blue Owl Cannot Demonstrate a Fraudulent Transfer Because the 2265 Account Was Encumbered by Valid Liens

In the CII and in the FAC, the Liquidating Trust and Blue Owl allege that the Distributions are avoidable as fraudulent transfers under Utah's Uniform Voidable Transactions Act, Delaware's

Uniform Fraudulent Transfer Act,[9] and the Federal Debt Collection Procedures Act (the "Fraudulent Transfer Statutes"). CII ¶¶ 101–113, D.I. 95-1. To survive summary judgment on these claims, the Liquidating Trust and Blue Owl must demonstrate a triable issue of fact as to whether the Distributions satisfy the required elements of the Fraudulent Transfer Statutes. *See, e.g.*, *Citizens Bank of Clearwater* v. *Hunt*, 927 F.2d 707, 713 (2d Cir. 1991) (because summary judgment motion "called into question the evidence with regard to all aspects of Citizens' fraudulent conveyance claim" plaintiff was "required to 'make a showing sufficient to establish the existence of . . . element[s] essential to [its] case, and on which [it would] bear the burden of proof at trial.'" (citations omitted)). However, a review of the statutory definitions, alongside the undisputed facts surrounding the relevant deposit account, makes clear that summary judgment should be granted in Defendants' favor, and the claims in the CII and the fraudulent transfer claims in the FAC should be dismissed.

A series of interconnected statutory definitions govern this issue:

- The Liquidating Trust and Blue Owl seek to avoid "transfers" pursuant to the Fraudulent Transfer Statutes. CII ¶¶ 101–113, D.I. 95-1 (relying on Utah's Uniform Voidable Transactions Act, Delaware's Uniform Fraudulent Transfer Act, and the Federal Debt Collection Procedures Act as "applicable law" for purposes of 11 U.S.C. § 544(b)); FAC ¶¶ 137–156, D.I. 3 at 105–08 (relying on Utah's Uniform Voidable Transactions Act).

- "Transfer" is defined as any mode of parting with an "asset or an interest in an asset." Utah Code Ann. § 25-6-102(16); Del. Code Ann. tit. 6, § 1301(12); 28 U.S.C. § 3301(6).

- "Asset" is defined to exclude property "to the extent" it is "encumbered by a valid lien." Utah Code Ann. § 25-6-102(2)(a); Del. Code Ann. tit. 6, § 1301(2); 28 U.S.C. § 3301(2).

---

[9] The CII asserts state law claims under Delaware law, in addition to claims under Utah law that were asserted in the FAC (which did not assert any claims under Delaware law). Utah's choice of law rules apply, *see Ferens* v. *John Deere Co.*, 494 U.S. 516, 531(1990) (transferor court's choice of law rules apply following transfer between federal courts), and require application of Utah's fraudulent transfer law because that is the local law of Walker Edison's executive offices. Utah Code Ann. § 25-6-402. Walker Edison was headquartered in Utah, CII ¶ 6, D.I. 95-1, and is not alleged to have any executive offices in Delaware. However, for purposes of the issues raised in this motion, the choice of law issue is immaterial because both Utah and Delaware fraudulent transfer laws exclude assets subject to valid liens.

- "Valid lien" is uniformly defined as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." Utah Code Ann. § 25-6-102(17); Del. Code Ann. tit. 6, § 1301(12); 28 U.S.C. § 3301(7).

Courts consistently hold that a transfer of property encumbered by a "valid lien" cannot give rise to a claim under the Fraudulent Transfer Statutes. *See, e.g.*, *Rupp* v. *Moffo*, 358 P.3d 1060, 1064 (Sup. Ct. of Utah 2015) (summary judgment for defendant was appropriate because "the plain language of the [Utah Voidable Transactions] Act dictates that property that is fully encumbered is not an 'asset' within the Act's reach"); *Thermo Credit, LLC* v. *DCA Servs., Inc.,* 755 F. App'x 450, 455–56 (6th Cir. 2018) (cash payments from debtor subject to valid lien in favor of secured creditor were not "assets" giving rise to fraudulent transfer claim); *In re Fair Fin. Co.*, 13 F.4th 547, 552–53, 555 (6th Cir. 2021) (debtor's payments to revolving lender which "knowingly propped up" debtor's fraudulent Ponzi scheme were not "assets" capable of supporting fraudulent transfer claim because lender's "valid lien" encumbered transferred funds); *Am. Fed. Bank* v. *W. Cent. Ag Servs.*, 530 F. Supp. 3d 780, 787 (D. Minn. 2021) (granting summary judgment because $800,000 cash payment from account subject to bank's perfected security interest not an "asset" within meaning of fraudulent transfer statute); *Kapila* v. *CTS Equities Ltd. P'ship*, 421 So. 3d 748, 753–55 (Fla. Dist. Ct. App. 2025), *reh'g denied* (Oct. 14, 2025) (affirming grant of summary judgment to defendant where cash distributions were encumbered by perfected security interests); *Edgewater Growth Cap. Partners LP* v. *H.I.G. Cap., Inc.*, 68 A.3d 197, 229 (Del. Ch. 2013) ("Because a 'transfer' is the disposing of the 'property of the debtor' that is *not* 'encumbered by a valid lien,' HIG did not make a 'transfer' under the Foreclosure Sale Agreement that is within the scope of the Delaware Uniform Fraudulent Transfer Act.").

The rationale for these rulings is simple: "a creditor cannot challenge a conveyance as fraudulent when it could not have reached the subject property had it not been conveyed." *Kapila*, 421 So. 3d at 754 (quotation omitted); *Am. Fed. Bank*, 530 F. Supp. 3d at 788 (applicable state's

fraudulent transfer law's purpose "is not so broad as to cover all instances of fraud or theft" but rather is to "prevent debtors from putting property which is available for the payment of their debts beyond the reach of their creditors."). Accordingly, when property encumbered by a valid lien is transferred, "there is no harm done to either the creditor holding the lien—the secured creditor—or any other unsecured creditor of the debtor" because the secured creditor "retains the right to proceed against the property by foreclosing its lien" and unsecured creditors "would never have been able to recover their debt by means of the encumbered property." *Rupp*, 358 P.3d at 1064–65.

Summary judgment is appropriate here because the 2265 Account was encumbered by valid liens prior to the Distributions. *See, e.g.*, *Thermo Credit, LLC*, 755 F. App'x at 456 ("The proper time to evaluate whether the property was encumbered is prior to the transfer, when it was in [the debtor's] possession and control."); *Kapila*, 421 So.3d at 753 (in assessing whether funds were encumbered by a lien, "we do not look to whether the funds were encumbered *after* the transfer"). This is clear through the application of a series of interconnected provisions in California's Commercial Code[10]:

- A perfected security interest takes priority over a judicial lienholder, Cal. Com. Code § 9317(a) (2001),[11] and is thus a "valid lien" for purposes of the Fraudulent Transfer Statutes.

---

[10] The U.C.C. provides that "[t]he local law of a bank's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account maintained with that bank." U.C.C. § 9-304(a); Del. Code Ann. tit. 6, § 9-304(a); Utah Code Ann. § 70A-9a-304(a); Cal. Com. Code § 9304(a) (2001). A "bank's jurisdiction" is determined by the governing agreement: "[i]f an agreement between the bank and the debtor governing the deposit account expressly provides that a particular jurisdiction is the bank's jurisdiction for purposes of this part, this Article, or the Uniform Commercial Code, that jurisdiction is the bank's jurisdiction." Cal. Com. Code § 9304(b)(1) (2001). [redacted]

[11] The provisions of California's Commercial Code referenced herein were those in effect at the time the Distributions were paid. California's Commercial Code was amended, effective January 1, 2024, following payment of the Distributions.

- A security interest in a deposit account may be perfected by "control." Cal. Com. Code § 9314(a) (2001).

- As relevant here, a secured party has "control" over a deposit account if either of the following is true:

    - "The secured party is the bank with which the deposit account is maintained." Cal. Com. Code § 9104(a)(1) (2001).

    - "The debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with the secured party's instructions directing disposition of the funds in the deposit account without further consent by the debtor." Cal. Com. Code § 9104(a)(2) (2001) .

- Because agents or other representatives routinely hold security interests on behalf of others, "secured party" is defined to include "a trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest or agricultural lien is created or provided for." Cal. Com. Code § 9102(a)(73)(E) (2001).

- An official comment to the U.C.C. states that "in determining whether a particular person has control" under 9-104(a), "the principles of agency apply." U.C.C. § 9-104 (Am. L. Inst. & Unif. L. Comm'n 2010).[12]

Here, there can be no dispute that, at the time of the Distributions, the 2265 Account was subject to "valid liens" held by both Wells Fargo and Blue Owl.

*First*, with respect to the Wells Fargo Loan, Wells Fargo had "control" over the 2265 Account under Section 9104(a)(1) because [redacted] Accordingly, there can be no question that, as a secured party with control, [redacted].

[12] Because California's Commercial Code "was adopted verbatim" from the U.C.C., the Court "may look to the [U.C.C.'s] official comments, as well as to how other courts have interpreted the [U.C.C.], for guidance." *Kirzhner* v. *Mercedes-Benz USA, LLC*, 470 P.3d 56, 65 (Cal. 2020).

*Second*, with respect to the Term Loan, Blue Owl's security interest in the 2265 Account was also perfected by control. [redacted] [redacted] Under the Final Cash Collateral Order, no party may now challenge the validity or perfection of Blue Owl or Wells Fargo's liens. *Supra* § IV.H.

Accordingly, the 2265 Account was encumbered by the perfected security interests held by both Blue Owl (on behalf of the Lenders) to secure the Term Loan and Wells Fargo to secure

the Wells Fargo Loan. Because the 2265 Account was encumbered by a "valid lien" to the extent of Blue Owl and Wells Fargo's security interests, there is no disputed question of fact as to whether an "asset" was "transferred" in the Distributions. None was. Accordingly, there is no triable question of fact as to the Liquidating Trust and Blue Owl's fraudulent transfer claims, and the Court should grant summary judgment dismissing those claims in their entirety.

## VII. CONCLUSION

For the foregoing reasons, the motion for summary judgment should be granted, dismissing (i) all claims asserted by Blue Owl on behalf of the Non-Party Lenders, and (ii) the Liquidating Trust's and Blue Owl's claims for actual and constructive fraudulent transfer under the Fraudulent Transfer Statutes. Resolving these two threshold issues now will substantially narrow the issues presented in subsequent summary judgment motions on the merits, or later at trial, conserving substantial time and resources for both the Court and the parties.

[*Remainder of page intentionally left blank.*]

Dated: June 18, 2026

**RICHARDS, LAYTON & FINGER**

*/s/ Russell C. Silberglied*
Russell C. Silberglied (No. 3462)

One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
Fax : 302-651-7701
silberglied@rlf.com

*For all defendants*

**SPERLING KENNY NACHWALTER**

Greg Shinall (admitted *pro hac vice*)
Matthew H. Rice (admitted *pro hac vice*)

321 N. Clark St., Suite 2500
Chicago, Illinois 606543
(312) 641-3200
shinall@sperlingkenny.com
mrice@sperlingkenny.com

*For defendants: Adam Suttin, Phil Damiano, Kyle Casella, David Fiorentino, Ken Murphy, and Walker Edison Holding Co., LLC*

**PARKINSON BENSON POTTER LLP**

Brennan H. Moss (admitted *pro hac vice*)

2750 Rasmussen Rd, Suite H-107
Park City, UT 84098
(801) 401-1608
brennan@pbplaw.com

*For defendants: Brad Bonham, MB & BB Holdings, LLC, and Matt Davis*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

William A. Clareman (admitted *pro hac vice*)
Geoffrey Chepiga (admitted *pro hac vice*)
Alison Benedon (admitted *pro hac vice*)
Adam Savitt (admitted *pro hac vice*)
Jacob Braly (admitted *pro hac vice*)
Vida Robinson (admitted *pro hac vice*)

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
gchepiga@paulweiss.com
wclareman@paulweiss.com
abenedon@paulweiss.com
asavitt@paulweiss.com
jbraly@paulweiss.com
virobinson@paulweiss.com

*For defendants: Prospect Hill Growth Fund II, L.P., Prospect Hill Growth Fund II Co-Invest, L.P., Prospect Hill Growth Partners, L.P., JWC-WE Holdco, LLC, and JWC-WE Holdings, L.P.*

**Schedule A**

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]